62 So.2d 224

**DAVIS v. STATE.**

**7 Div. 177.**

Court of Appeals of Alabama.

Aug. 26, 1952.

Rehearing Denied Oct. 7, 1952.

James G. Adams, Jr., Birmingham, for appellant.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

PRICE, Judge.

The appellant was convicted of murder in the second degree, under an indictment charging him with murder in the first degree. His punishment was fixed at ten years' imprisonment in the penitentiary.

Appellant's brother, Howard Davis, alias Samp Davis, was tried previously and found guilty of murder in the first degree and sentenced to death by electrocution for the killing of C. L. Prince. This appellant was tried as an accomplice to that murder.

The facts and circumstances surrounding the killing of Mr. Prince are fully set out by the Supreme Court in Samp Davis case [Davis v. State], 59 So.2d 592, and are adopted as the facts of this case.

We here detail only the facts relating to the actions of this defendant with reference to the killing.

According to the evidence, this defendant was asleep on the back seat of the automobile driven by Samp Davis at the time Mr. Prince stopped them on Highway 25. There was no testimony that defendant got out of the automobile at that time or that he ever made any statement to or concerning Mr. Prince.

The State relied on the testimony of Walter McKinney and John Henry Broughton as to what took place at the scene of the crime on Dead Hollow Road. McKinney was a first cousin of the Davis boys and Broughton was a close friend. Both were riding in the Davis automobile.

McKinney, who was riding on the back seat with defendant, testified that when they met deceased on the Dead Hollow Road, Samp Davis said, "Here is that son of a bitch again and I am going to fix him." The automobiles which were traveling in opposite directions, came to a stop, "back bumper to back bumper," Mr. Prince and Samp Davis got out of the cars about the same time. The others then got out of the Davis car, defendant getting out last.

When defendant got out of the car Samp Davis had deceased by the collar and defendant caught Mr. Prince's shirt somewhere about the shoulder. The witness said "boys, I wouldn't do that" and defendant turned deceased loose and got back in the car and lay down.

On cross examination this witness testified defendant did not attempt to strike deceased and when McKinney spoke he turned him loose immediately and was walking back towards the car when Samp hit the deceased.

This witness stated that Mr. Prince was standing at the back of his car, facing the Davis automobile and the only light in that area was from the red tail light of deceased's automobile, and that all four of the Negroes were behind Mr. Prince's car.

Defendant's counsel then asked the witness: "Q. If you are standing there like Mr. Prince was standing and I am standing like Samp was standing and you were standing behind there in the night and in the dark, you couldn't truthfully tell these people here that boy there really laid his hand on Mr. Prince at all?" The witness answered, "no, sir, I couldn't say, the way they were standing."

John Henry Broughton testified he was riding on the front seat with Samp Davis. When they drove up, Mr. Prince's car was already parked on the side of the road, and Mr. Prince was standing at the back of his car. Samp said, "There is that son of a bitch again and I am going to get him." Samp got out of the car immediately caught deceased in the collar and hit him and as deceased was falling defendant walked toward them and raised his hand, but didn't touch deceased and when McKinney spoke he turned and went back to the car.

Broughton's testimony placed the automobiles almost side by side, with the front bumper of Davis' car nearly even with the back bumper of deceased's car, with the lights of the Davis automobile shining about the area where the difficulty occurred. This witness testified that he and McKinney did not get out of the automobile until after Mr. Prince was killed.

No evidence was introduced on defendant's behalf.

The well established rule is:

"Aid and abet 'comprehend all assistance rendered by acts or words of encouragement or supports or presence, actual or constructive, to render assistance should it become necessary. No particular acts are necessary. If encouragement be given to commit the felony, or if, giving due weight to all the testimony, the jury are convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, then that ingredient of the offense is made out.' Ralford's case [Raiford v. State], 59 Ala. 106; Tally's case [State ex rel. Martin v. Tally], 102 Ala. [25] 65 et seq., 15 So. 722.

"If there is no prearrangement or preconcert, mere presence, with the intent to give aid if necessary, is not aiding or abetting 'unless the principal knew of the presence, with intent to aid, of such person.' Tally's case, supra; Raiford's case, supra; Morris' case [Morris v. State, 146 Ala. 66, 41 So. 274], supra; 1 Whar.Cr.Law, Sec. 210.

" 'Conspiracy, or a common purpose to do an unlawful act, need not be shown by positive testimony. Nor need it be shown that there was prearrangement to do the specific wrong complained of.' Martin's case [Martin v. State], 89 Ala. 115, 8 So. 23, 18 Am.St.Rep. 91.

" 'So, if being present without preconcert,' two or more persons 'entered into a common illegal purpose, and one or more of them did the deed of violence, and the others were present, aiding, abetting, encouraging, or giving countenance to the unlawful act, or ready (with the perpetrator's knowledge of their intent to render assistance to him if necessary—Tally's case, supra) to lend assistance if it should become necessary, * * * the other or others are as guilty as the actor or actors.' Amos's case [Amos v. State], 83 Ala. 1, 4, 3 So. 749, 751 (3 AmSt.Rep. 682)." See also Kelly v. State, 31 Ala.App. 194, 13 So.2d 691.

Whether the defendant aided and abetted in the murder of the deceased was a question for the jury to determine from the conduct of the parties, and we are of the opinion that the evidence was sufficient to go to the jury on the question of defendant's guilt and there was no error in the refusal of the affirmative charge.

Under the holding of the following authorities the photographs of the body of deceased were correctly admitted in evidence. Davis v. State, Ala.Sup., 59 So.2d 592;[1] Maund v. State, 254 Ala. 452, 48 So. 2d 553; Grissett v. State, 241 Ala. 343, 2 So.2d 399; McKee v. State, 33 Ala.App. 171, 31 So.2d 656, certiorari denied 249 Ala. 433, 31 So.2d 662.

The record discloses that during the examination of a witness the court's attention was called to the fact that defendant was not in the court room. The court ordered that the testimony taken during defendant's absence be stricken and instructed the jury to disregard it.

Counsel insists defendant was denied his constitutional rights by this proceeding.

In the case of Lee v. State, 31 Ala.App. 91, 13 So.2d 583, certiorari denied 244 Ala. 401, 13 So.2d 590, the rule was declared that in a capital case the defendant's continuous presence, from arraignment to sentence, is essential to jurisdiction, and cannot be waived by the defendant. And that a capital case is one which may be punished by death regardless of whether a lesser sentence was imposed.

1 257 Ala. 447.

The rule was adhered to in the recent cases of Chaney v. State, Ala.Sup., 56 So. 2d 385, 386, and Neal v. State, 257 Ala. 496, 59 So.2d 797.

The State insists that the situation here is similar to that in the case of Boyd v. State, 153 Ala. 41, 45 So. 591, wherein the Supreme Court held that an exception was frivolous where a witness, in defendant's absence, had testified she knew defendant, and the court immediately excluded said answer.

We are not informed from the record here of the duration of defendant's absence nor of what transpired while he was out of the court room. Under the recent pronouncement of our courts, supra, we conclude that this cause must be reversed and defendant granted a new trial.

Counsel for appellant objected to two portions of the Solicitor's argument. As to the first, no exception was reserved to the court's ruling. Anderson v. State, 209 Ala. 36, 95 So. 171.

As to the second objection, the following occurred:

> "By Mr. Adams: We object to the argument of the Solicitor. That argument is prejudicial, passionate and designed especially to appeal to the jury on a prejudicial basis.
>
> "By Mr. Luck: I said those four men over there, one is his brother, who was convicted, one was a first cousin of the defendant and the other a friend.
>
> "By Mr. Adams: He said, you see what we are up against under those circumstances.
>
> "By the Court: Yes, what they are up against under those circumstances is excluded gentlemen of the jury, don't consider that as part of the argument.
>
> "By Mr. Adams: I move for a mistrial on the basis of that.
>
> "By the Court: I deny your motion.
>
> "By Mr. Adams: We reserve an exception."

If there was error, it was fully cured by the prompt action of the court. Bryant v. State, 252 Ala. 153, 39 So.2d 657; Burkett v. State, 215 Ala. 453, 111 So. 34; Ellis v. State, 244 Ala. 79, 11 So.2d 861.

Charge 15 was refused without error. Similar charges have been held bad for omitting the word "reasonable" as descriptive of "hypothesis." Bones v. State, 117 Ala. 138, 23 So. 138; Jarvis v. State, 138 Ala. 17, 34 So. 1025; McIntosh v. State, 33 Ala.App. 534, 36 So.2d 109, certiorari denied 251 Ala. 62, 36 So.2d 111; Alabama Digest, Criminal Law, 🔑784(7), 789(16). The charge is otherwise faulty.

Charge A was fairly and substantially covered by given charges requested.

Charge B was an abstract proposition of law.

Charge F is argumentative and misleading.

Charge D was invasive of the province of the jury. Whether a witness is an accomplice is a question of fact for the jury, to be determined from all the evidence in the case. Alabama Digest, Criminal Law, 🔑763(14).

Reversed and remanded.